# Folmar *v.* Folmar.

*Statutory Proceeding for Authority to construct Mill-Dam.*

1. *Mill-dams; jurisdiction to authorize erection of.*—The statutory jurisdiction of proceedings to authorize the construction of mill-dams across water-courses not navigable (Code, §§ 3555–72), which is conferred upon the judge of probate, and not upon the Probate Court, is special and limited; and when the proceedings are assailed on error, the record must disclose every fact essential to the validity of the judgment or decree, and a strict observance of the course of procedure prescribed by the statute.

2. *Same; when jurisdiction attaches; contents of petition.*—The statutory jurisdiction attaches when a proper application is filed, and is recognized by the judge of probate; which application must contain a description of the lands on which it is proposed to erect the mill, and must designate the place at which it is to be located.

3. *Same; writ to sheriff, for summoning jury.*—The writ for the summons and inquest of a jury, which the judge is required to issue to the sheriff, must specify the day on which the jury is to meet, and ought properly to designate the place for its assemblage; and the place ought also to be described in the copy of the application, which is furnished to the sheriff for the guidance of himself and the jury.

4. *Same; execution of writ when lands are incorrectly described.*—If the place at which the mill is to be located is not described in the writ, and is incorrectly described in the copy of the application furnished to the sheriff, he should return the writ unexecuted, stating the reason; and he has no authority to execute it at the place which he personally knows to be the intended place.

5. *Same; competency of jurors.*—The jury of inquest is required to consist of " seven disinterested freeholders of the county," who should be free from any bias or prejudice which would disqualify a person as a juror in any other case; and persons who served as jurors on a former inquest, which was set aside, are not competent to serve again.

APPEAL from Probate Court of Crenshaw.

In the matter of the application of Jesse Folmar, for authority to construct a mill-dam across " King's Mill creek," a non-navigable water-course in said county, for the use of a mill to be erected "on the east side of said water-course," on lands belonging to the petitioner, which were described as the

"west half of the north-east quarter of section 33, township 9, range 19." The petition was filed on the 23d February, 1880, and was contested by George S. Folmar, on whose motion the first inquest of the jury was set aside; but a *venire de novo* being issued, on motion of the petitioner, the second inquest of the jury was approved by the judge of probate, and an order granted authorizing the construction of the mill-dam as prayed. On the hearing of the application, with the inquest of the jury, the contestant reserved several exceptions to the rulings and decree of the judge; and these matters are now assigned as error. The material facts are stated in the opinion of the court.

JNO. A. PADGETT, JOHN GAMBLE, and JNO. D. GARDNER, for appellant.

GRIFFIN & WOOD, *contra.*

BRICKELL, C. J.—Proceedings for authority of law to erect dams across water-courses not navigable, for the use of mills, gins or factories, are, under the statutes, instituted, conducted, and determined before the judge of probate of the county in which the mill, gin, or factory is proposed to be located.—Code of 1876, §§ 3555–79. It is upon the judge, and not upon the Court of Probate, jurisdiction is conferred. The jurisdiction is statutory, special, and limited. When on error the regularity of its exercise is assailed, the record should discover every fact the statute declares essential to the validity of the sentence, and a strict observance of the course of procedure prescribed.—*Owen v. Jordan*, 27 Ala. 608; *Martin v. Rushton*, 42 Ala. 289.

The application in this cause, presented to the judge of probate, is in conformity to the statute, and, of itself, was sufficient to call the jurisdiction into exercise. When it was filed, and by the judge recognized as the commencement of the statutory proceeding, the jurisdiction attached—a case was made, which was *coram judice.* The applicant owning the land on both sides of the water-course, the first step the judge was required to take, was the issue of "a writ to the sheriff, requiring him to summon seven disinterested freeholders of the county, to meet at the place where the dam is to be erected, on the day specified in the writ, not less than fifteen, nor more than thirty days after filing the application, and then and there to inquire touching the matters therein contained." It is the duty of the sheriff, in obedience to the writ, to summon the freeholders, and to attend on the day appointed, with a copy of the application, and then and there

[Folmar v. Folmar.]

to administer an oath to the jury, " to discharge their duties fairly, and to the best of their ability."

It is to be observed that the application, which calls the jurisdiction of the judge into exercise, must contain not only a description of the land on which it is proposed to erect the mill, but it must show also the place where the mill is to be located—on which side of the stream it is to stand. The writ issued to the sheriff must specify the day appointed, and ought, properly, to specify the place for the assemblage of the jury. On the day, and at the place appointed, the sheriff, or his deputy, must attend, and the jury must assemble. Time and place are thus made of the very essence of the regularity of the proceedings of the sheriff, and of the jury. They are as essential as they would be to the jurisdiction of a court having terms appointed by law at a particular time and place. The writ issued to the sheriff must specify the day appointed for the assemblage of the jury. The *place* of assemblage, it may be, can be ascertained from the copy of the application which the sheriff must have present for his own guidance and direction, and that of the jury, so that they may know, and from the face of their proceedings it can be made known, that the inquest was made where the law commands that it should be made.

We pass all proceedings prior to the inquest returned to the judge, upon which he finally acted, and granted the application. The writ issued to the sheriff appoints the day, but is silent as to the place for the assemblage of the jury. That was to be ascertained from the copy of the application, with which the sheriff attended. Conceding the writ was not irregular (which we do not decide), because the place was not specified, it was only from the copy of the application the place could be ascertained. The sheriff had a paper purporting to be a copy of the application, but it was incorrect, and the lands therein mentioned were other and different lands from the tract stated in the original application. The imperfection the sheriff attempted to cure, by stating to the jury the lands which were described in the original application, and assembling them at the place at which they ought to have been assembled, if the copy in his possession had corresponded with the original. This is a novel method of correcting errors of this kind, which will creep into judicial proceedings, and we are not aware of any authority which will support it. The plain duty of the sheriff was the return of the writ unexecuted, stating the cause ; or, that it was executed by assembling the jury on the lands specified in the copy of the application, and that there the inquest could not be made. He was without authority to assemble them at

[Folmar v. Folmar.]

another place, however full may have been his personal knowledge that it was the place intended.

There is another grave error, which vitiates the present proceedings. A majority of the jurors were members of a former jury, returning an inquest favorable to the erection of the mill and dam, which had been set aside. It is manifest these jurors had already prejudged the issues they were to try—that they were not free from bias. With fairness, to the best of their ability, they were sworn again to make inquiries they had made and determined. It is the policy of the law in all cases, civil or criminal—whether in courts of inferior or general jurisdiction; whether the proceeding is strictly, or only *quasi* judicial—to exclude as jurors all who are under any bias, or want of impartiality, which may prevent them from hearing, trying, and determining fairly. Trial by jury, and the administration of justice and of the law, would soon sink into merited contempt, if the jury-box can be filled with men who, whatever may be their other qualifications, have not that of impartiality—a freedom from all bias or prejudice. If there is a mistrial, or the verdict of the jury is set aside, and a new trial granted in the Circuit Court, upon no subsequent trial is a member of the former jury competent. He has prejudged the case, and, though on the subsequent trial the evidence may vary, and, it may be, would change the opinion he had formed, it is wiser not to lead him into the temptation of becoming a partisan, the earnest advocate of the opinion he had formed, and the unswerving combatant of all differing and opposing opinions. The inquest of the jury is to be reduced to writing, signed by a majority of them, and returned to the probate judge. A majority thus, in effect, determine the inquiries the jury are bound to make and determine; and in this case, the majority were under the bias of preconceived opinions, expressed publicly under the sanction of an oath. It is true the inquest is not conclusive—the judge may resort to other evidence to enable him to determine whether the application shall be granted. Yet, it remains with a force and dignity akin to that of the verdict of a jury, or an issue of fact awarded by a chancellor, who could never suffer his conscience to be guided by the verdict of jurors who were not impartial.

Without considering other questions presented by the record, we are of opinion, for the reasons stated, the judge of probate ought to have vacated the inquest, and to have awarded an *alias* writ to the sheriff. The order of the probate judge, granting the application, is reversed and annulled, and the cause is remanded.